## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WILLIAM TONY MULLIS, JR.,

      Plaintiff,

v.                                 Case No. 8:23-cv-2245-WFJ-NHA

RANDY SHEPHERD,

      Defendant.

_____/

## <u>ORDER</u>

      This matter comes before the Court on Defendant Corporal Randy Shepherd's motion for summary judgment, (Doc. 73), as well as *pro se* Plaintiff William Tony Mullis, Jr.'s motion for summary judgment, (Doc. 67). The parties filed responses, (Docs. 75, 79), and replies, (Docs. 78, 81). After careful consideration, the Court **DENIES** both motions.

## I.   Background

### A. Facts[1]

      This case arises from an incident of excessive force that allegedly occurred when Mr. Mullis was booked into the Pinellas County Jail. Around 8:30 p.m. on April 11, 2021, Mr. Mullis was drinking alcohol outside a Target store in Largo, Florida. (Doc. 73-6 at 2). He "directed a racial slur" at a customer who was "approaching the entrance." (*Id.*) The customer shoved Mr. Mullis onto the sidewalk; Mr. Mullis got up and followed him into

---

[1] The following facts are undisputed unless otherwise noted.

the store. (*Id.*) Another confrontation ensued. (*Id.*) This time, the customer punched Mr. Mullis in the face. (*Id.*) The police were called, but the customer had left the store by the time officers arrived. (*Id.*) Mr. Mullis was issued a trespass warning and taken to a hospital. (*Id.*; *see also* Doc. 73-7 at 4).

Mr. Mullis "refus[ed] all treatment" at the hospital and "want[ed] to leave." (Doc. 73-9 at 1). He was released that evening. (*Id.*) Shortly thereafter, paramedics responded to a bus stop where they found Mr. Mullis "sitting up on [the] sidewalk" with his "head slumped over." (Doc. 73-8 at 1). He had a "strong smell of alcohol on [his] breath" and admitted that he had been drinking for "several hours." (*Id.*) Paramedics transported Mr. Mullis to a different hospital for further evaluation. (*Id.*)

Mr. Mullis behaved inappropriately at the hospital, threatening and cursing at patients and staff members "every time [they] walked past" him. (Doc. 73-11 at 8). Law enforcement was summoned, and an officer detected "a strong odor of consumed alcohol emanating from [Mr. Mullis's] breath." (*Id.*) The officer also observed "a few scratches and scabs" on Mr. Mullis's body, including "what appeared to be a fresh injury on the left side of his face near his eye." (*Id.*) Mr. Mullis began to threaten and throw objects at law enforcement. (Doc. 73-10 at 1). He was arrested for disorderly intoxication and taken to the Pinellas County Jail. (Doc. 73-11 at 8).

Mr. Mullis arrived at the jail around 2:25 a.m. on April 12, 2021. (Doc. 73-3 at 2). Corporal Shepherd was working in the booking area. (*Id.*) In his affidavit, Corporal Shepherd stated that he saw "several abrasions" on Mr. Mullis's face and summoned a nurse to evaluate him. (*Id.* at 4). Mr. Mullis, for his part, testified that he could not "recall

having any type of injuries prior to coming into the jail." (Doc. 73-2 at 15-16). In any event, three photographs were taken of Mr. Mullis at the "booking desk." (Doc. 73-3 at 4). The photographs show abrasions on the back and right side of his head; they also depict swelling on the right ear. (*Id.* at 12-14). The nurse ultimately determined that Mr. Mullis "would need to be sent out to the hospital . . . for further evaluation due to the visible injuries to his head and face." (*Id.* at 6).

Before Mr. Mullis was transported to the hospital, however, Corporal Shepherd and two other staff members took him to a holding cell so that he could change into "the jail uniform." (*Id.*) Mr. Mullis and Corporal Shepherd offer different accounts of what happened next. Mr. Mullis testified that Corporal Shepherd asked him to "remove [his] clothes" and "lift [his] privates." (Doc. 73-2 at 21). Mr. Mullis took off his socks and "pushed" his shorts and boxers "down to [his] ankles." (*Id.*) According to Mr. Mullis, Corporal Shepherd said, "Look at this f\*cking guy who doesn't even have hair on his dick." (*Id.*) At this point, Mr. Mullis "lifted [his] privates." (*Id.*) Corporal Shepherd then "pushed [him] down hard" onto a "concrete bench," "hit [him] several times in the back of the head," and "kneed" him on his "right ear." (*Id.* at 18, 21). Mr. Mullis testified that during this incident, he was "complying with [Corporal Shepherd's] instructions" and was "not uncooperative." (*Id.* at 37).

Corporal Shepherd denies these allegations. Specifically, he stated in his affidavit that "[n]o force was used on [Mr. Mullis] by [him] or anyone else in the holding cell or at any other time that [Mr. Mullis] was [] present in intake-receiving." (Doc. 73-3 at 6). Corporal Shepherd further explained that "[h]ad a use of force occurred on [Mr. Mullis] at

any point in time, anywhere, by anyone, it would have been documented in a serious incident report and also documented separately in a use of force report." (*Id.*)

Mr. Mullis was ultimately taken to the hospital and evaluated at approximately 4:15 a.m. (*Id.*; *see also* Doc. 73-14 at 1). The notes for this visit reflect that Mr. Mullis had "bruises to occipital and right parietal scalp." (Doc. 73-14 at 1). Mr. Mullis was discharged from the hospital and returned to the jail at 6:35 a.m. (Doc. 73-5 at 3). Inside the facility, Corporal Jacqueline Kaplan observed "superficial abrasions to the top of his head and right side of his face." (*Id.*) Three photographs of Mr. Mullis were taken to document his injuries. (*Id.* at 4-6). They appear to depict head injuries similar to those seen in the photographs taken earlier that day. (*Compare id.* with Doc. 73-3 at 12-14).

## B. Procedural History

Mr. Mullis filed this civil-rights action in October 2023, alleging that Corporal Shepherd used excessive force against him in the holding cell of the Pinellas County Jail. (Doc. 1 at 3-5). Following service of process, Corporal Shepherd answered the complaint, and the parties proceeded with discovery. (Docs. 7, 13, 18, 19).

Both Mr. Mullis and Corporal Shepherd have moved for summary judgment. (Docs. 67, 73). Mr. Mullis argues that "no genuine issue of material fact is disputed" as to whether Corporal Shepherd used "unreasonable excessive force." (Doc. 68 at 10). Corporal Shepherd, for his part, contends that he is entitled to qualified immunity because "the undisputed, material record evidence . . . plainly contradicts [Mr. Mullis's] unsupported account of the evening's events and, specifically, that Corporal Shepherd used injurious force on him." (Doc. 73 at 14).

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the non-moving party's favor.

*Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587.

The standard for assessing competing motions for summary judgment is no different from the standard for assessing a single motion for summary judgment. *Am. Bankers. Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Each competing motion must be considered on its own merits. *Id.* In other words, competing or cross-motions for summary judgment do not permit a court to grant summary judgment unless one of the moving parties is entitled to judgment as a matter of law on facts not genuinely in dispute. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).

## III.   Discussion

After careful review, the Court concludes that factual disputes preclude summary judgment for either side. Corporal Shepherd is not entitled to qualified immunity at this stage because a reasonable jury could find that he violated Mr. Mullis's clearly established right to be free from excessive force. But a reasonable jury could also conclude that Corporal Shepherd did not use any force against Mr. Mullis. Therefore, neither side is entitled to summary judgment.

### A.   Qualified Immunity

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). To receive qualified

immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022). Once this showing is made, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Id.* at 1340-41.

There is no dispute that Corporal Shepherd acted within the scope of his discretionary authority at all relevant times. Therefore, the Court considers whether Corporal Shepherd violated Mr. Mullis's constitutional rights and, if so, whether those rights were clearly established at the time.

The Fourteenth Amendment "guards against the use of excessive force against arrestees and pretrial detainees." *J.W. v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). To prove an excessive-force claim, a pretrial detainee must establish that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "[B]ecause force in the pretrial detainee context may be defensive or preventative—but never punitive—the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 953 (11th Cir. 2019). Even "a single punch to a non-resisting detainee constitutes excessive force." *Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)).

"In making a qualified immunity determination," the Court must "review[] the facts in the light most favorable to" the plaintiff. *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1318

(11th Cir. 2016). Here, Mr. Mullis testified that Corporal Shepherd physically attacked him in a holding cell for no reason. (Doc. 73-2 at 21). The incident allegedly began when Corporal Shepherd instructed Mr. Mullis to "remove [his] clothes" and "lift [his] privates." (*Id.*) Mr. Mullis started to undress, and Corporal Shepherd allegedly said, "Look at this f*cking guy who doesn't even have hair on his dick." (*Id.*) Mr. Mullis proceeded to "lift[] [his] privates." (*Id.*) Then, in Mr. Mullis's version of events, Corporal Shepherd "pushed [him] down hard" onto a "concrete bench," "hit [him] several times in the back of the head," and "kneed" him on his "right ear." (*Id.* at 18, 21). Mr. Mullis testified that, throughout the encounter, he was "complying with [Corporal Shepherd's] instructions" and was "not uncooperative." (*Id.* at 37).

Drawing all reasonable inferences in Mr. Mullis's favor, a rational jury could conclude that Corporal Shepherd used "objectively unreasonable" force against Mr. Mullis. *Kingsley*, 576 U.S. at 397. In Mr. Mullis's version of events, Corporal Shepherd pushed him onto a concrete bench, punched him in the head, and "kneed" him on his right ear—all while he was "complying with [Corporal Shepherd's] instructions." (Doc. 73-2 at 18, 21, 37). If a detainee is compliant and not resisting, "there is no longer a need for force," and thus "the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Piazza*, 923 F.3d at 953; *see also Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs*, 456 F. App'x 845, 848 (11th Cir. 2012) ("Under [plaintiff's] version of events, there was no need for the use of force, much less for the amount of force used. Such a gratuitous use of [force] on a handcuffed and compliant pretrial detainee constitutes a violation of the Fourteenth Amendment's

prohibition on the use of excessive force."). Applying this well-established principle, a reasonable jury could conclude that Corporal Shepherd violated Mr. Mullis's right to be free from excessive force by physically attacking him without provocation.

Corporal Shepherd argues that the Court should disregard Mr. Mullis's sworn account of events because it is "plainly contradict[ed]" by the record. (Doc. 73 at 13-14). Citing the photographs that were taken during booking, Corporal Shepherd contends that Mr. Mullis's "injuries were obviously, visibly apparent when he entered the jail and before he ever came in contact with Corporal Shepherd." (*Id.* at 13). Moreover, according to Corporal Shepherd, it is "[j]ust as apparent . . . how [Mr. Mullis] likely got scraped and bruised." (*Id.*) In Corporal Shepherd's view, Mr. Mullis suffered his injuries before he arrived at the jail—specifically, during the "pugilistic capers" at the Target store and the hospital where he was arrested. (*Id.*) Corporal Shepherd thus argues that "there can be no genuine dispute that all of [Mr. Mullis's] injuries occurred before he ever encountered Corporal Shepherd," and that Corporal Shepherd "did not use force." (*Id.* at 14).

This argument is unpersuasive. In *Scott v. Harris*, the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). The record in *Scott* included a video of a high-speed chase between a police officer and a civil-rights plaintiff. *Id.* at 374-75. The video "so utterly discredited" the plaintiff's version of events that the Supreme Court held no reasonable jury could believe the plaintiff. *Id.* at 380. The "blatantly contradicted by the record" exception is

narrow, however. It applies only when the evidence "definitively establish[es] what happened and what did not." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019).

Here, the Court cannot say that Mr. Mullis's testimony about the holding-cell incident is "so utterly discredited by the record" that no reasonable jury could believe it. *Scott*, 550 U.S. at 380. Nothing in the record "definitively establish[es] what happened" in the cell. *Sears*, 922 F.3d at 1208. For example, neither side has presented video footage of the alleged excessive-force incident. Furthermore, the evidence Corporal Shepherd cites— primarily the police reports and photographs—rebut Mr. Mullis's allegations only as to the severity or existence of his injuries. "The extent of injury is only one factor in a Fourteenth Amendment excessive-force claim and is not dispositive." *Nasseri v. City of Athens*, 373 F. App'x 15, 17 (11th Cir. 2010). Indeed, courts "may not superimpose onto [the excessive-force] inquiry an arbitrary injury threshold." *Joassin v. Murphy*, 661 F. App'x 558, 560 (11th Cir. 2016); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (declining to hold that "the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive-force claim"); *Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000) ("[T]here is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for . . . excessive force."). Accordingly, "even if [Mr. Mullis] overstates his alleged injuries, [Corporal Shepherd is] not entitled to judgment as a matter of law." *Joassin*, 661 F. App'x at 560.

Corporal Shepherd "does not offer a video recording of the incident," nor does he present other evidence that conclusively establishes what happened in the holding cell. *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). Instead, he offers "forensic

evidence that does not so utterly discredit [Mr. Mullis's] testimony that no reasonable jury could believe it." *Id.* Thus, the "sharply dueling accounts of what happened" cannot be resolved on summary judgment. *Id.*

Having determined that a reasonable jury could find a constitutional violation, the Court next considers whether, "at the time of the alleged conduct," Corporal Shepherd violated "clearly established law." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017). Accepting Mr. Mullis's version of the facts, the answer to that question is yes. "A plaintiff may show that a right was clearly established through: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021).

A "broad statement of principle" controls here. *Id.* Any reasonable official would have known in April 2021 that "the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Piazza*, 923 F.3d at 953; *see also Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments."); *Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A [F]ourteenth [A]mendment violation occurs . . . where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased."). In Mr.

Mullis's version of events, Corporal Shepherd pushed him onto a concrete bench, punched him in the head, and "kneed" him on his right ear—all while he was "complying with [Corporal Shepherd's] instructions." (Doc. 73-2 at 18, 21, 37). "[C]ase law bars [these] alleged actions with sufficient clarity to put any reasonable officer on notice that this conduct constituted excessive force." *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019). Therefore, at this stage of the litigation, Corporal Shepherd is not entitled to qualified immunity.[2]

## B. Mr. Mullis's Motion for Summary Judgment

Nor is Mr. Mullis entitled to summary judgment. As noted above, Corporal Shepherd submitted a sworn affidavit stating that "[n]o force was used on [Mr. Mullis] by [him] or anyone else in the holding cell or at any other time that [Mr. Mullis] was [] present in intake-receiving." (Doc. 73-3 at 6). Moreover, any injuries that Mr. Mullis displayed after the incident could plausibly be attributed to events that took place before he arrived at the jail. Thus, a reasonable jury could credit Corporal Shepherd's testimony and find that he did not violate Mr. Mullis's right to be free from excessive force. The "swearing contest" between Mr. Mullis and Corporal Shepherd "is one for the jury to resolve." *Jackson v. West*, 787 F.3d 1345, 1357 n.6 (11th Cir. 2015).

---

[2] Corporal Shepherd argues that he is entitled to summary judgment because Mr. Mullis "writes that his claim for relief arises under the Eighth Amendment in his motion for summary judgment and in other post-complaint filings." (Doc. 73 at 12 n.9). Corporal Shepherd is correct that Mr. Mullis's excessive-force claim arises under the Fourteenth Amendment rather than the Eighth Amendment. But Mr. Mullis is proceeding *pro se*, and his failure to cite the appropriate constitutional amendment does not warrant dismissal of his claim. *See Johnson v. Solomon*, No. 4:21-cv-470-MW-MAF, 2022 WL 3031232, at *3 (N.D. Fla. June 14, 2022) ("It is not necessary to dismiss this case because the *pro se* Plaintiff labeled his [excessive-force] claim as an Eighth Amendment violation rather than under the Fourteenth Amendment."), *adopted by* 2022 WL 3030535 (N.D. Fla. Aug. 1, 2022).

### IV.    Conclusion

Accordingly, it is **ORDERED** that:

1.  Corporal Shepherd's motion for summary judgment, (Doc. 73), is **DENIED**.

2.  Mr. Mullis's motion for summary judgment, (Doc. 67), is **DENIED**.[3]

**DONE** and **ORDERED** in Tampa, Florida, on October 31, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

---

[3] On October 23, 2024, the Court directed Mr. Mullis to show cause why this case should not be dismissed for failure to keep the Court apprised of his address. (Doc. 82). Five days later, the Court received a notice of change of address from Mr. Mullis indicating that he is now incarcerated at the Brevard County Jail. (Doc. 83). Accordingly, the show-cause order is discharged.